UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re ) | |
| ) | |
| ROBERT J. VEGA, ) | Case No.  6:10-bk-06873-KSJ |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | |
| | |
| SCOTT A. BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Adversary No. 6:10-ap-00299-KSJ |
| ) | |
| ROBERT J. VEGA, ) | |
| ) | |
| Defendant. ) | |
| ) | |

# MEMORANDUM OPINION PARTIALLY GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Scott Brown, invested significant monies together with the Debtor and Defendant, Robert Vega, in an unsuccessful real estate development project called The Verandas. Brown seeks a determination by this Court that the monies he contributed to the project should be excepted from the Debtor's discharge under Sections 523(a)(2)(A) and 523(a)(6) of the Bankruptcy Code.[1] The Parties filed cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56;[2] Vega seeks summary judgment on both counts,[3] while Brown seeks summary judgment only on the 523(a)(6) count.[4]

---

[1] All references to the Bankruptcy Code refer to 11 U.S.C. § 101 *et. seq*.
[2] Federal Rule of Civil Procedure 56 is applicable to this case via Federal Rule of Bankruptcy Procedure 7056.
[3] Doc. No. 125.
[4] Doc. No. 150.

Brown's claim stems from monetary contributions he made towards construction of The Verandas. Most of Brown's contributions were paid directly to Winter Park Partners Development, LLC ("WPPD"), the entity Brown and Vega created to manage the development of The Verandas.[5] Brown alleges in Count I that Vega induced his contributions through false misrepresentation or fraud, making the contributions nondischargeable debts under § 523(a)(2)(A). Brown bases his § 523(a)(6) claim in Count III on conversion, alleging Vega converted the monies Brown contributed to the real estate project.

Vega seeks summary judgment on both counts. Under Federal Rule of Civil Procedure 56, made applicable by Federal Rule of Bankruptcy Procedure 7056, a court may grant summary judgment where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."[6] The moving party has the burden of establishing the right to summary judgment.[7] Conclusory allegations by either party, without specific supporting facts, have no probative value.[8] In determining entitlement to summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."[9] "Where the record, taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."[10] In opposing summary judgment, a nonmovant who will bear the burden of proof at trial must "make a showing sufficient to establish the existence of an element essential to that party's case."[11]

---

[5] Brown characterizes all monies claimed as capital contributions WPPD, regardless of the payee, except for a $90,000 loan made to Jay Cary. (*See, e.g.*, Doc. No. 150 at 1-2.) He characterizes all monies tendered, including the loan to a fellow investor, Jay Cary, as contributions on behalf of The Verandas project. (Doc. No. 137-1 at ¶ 11).
[6] Fed. R. Civ. P. 56.
[7] *Fitzpatrick v. Schlitz (In re Schlitz)*, 97 B.R. 671, 672 (Bankr. N.D. Ga. 1986).
[8] *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985).
[9] *Scott v. Harris*, 550 U.S. 372, 380 (2007).
[10] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[11] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

## **Existence of a Debt**

Vega first argues he is not personally liable to Brown because none of Brown's checks were paid directly to Vega. In other words, he contends there is no debt to except from the discharge. Vega claims the only connection between them is that they co-invested in The Verandas. Indeed, the Parties' situation is not the typical nondischargeability scenario; typically a note or a judgment evidences the debt a plaintiff seeks to except from the debtor's discharge. Here, however, the monies Brown tendered initially went to entities other than the Debtor, and no note or judgment provides a clear basis for the underlying debt.

Before a debt can be determined nondischargeable, "a plaintiff must establish that the debtor owes him a debt."[12] A "debt" is a liability on a claim.[13] A "claim" is a "right to payment, whether such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."[14] "The plain meaning of a 'right to payment' is nothing more nor less than an enforceable obligation."[15] "[S]tate law determines the existence of a claim based on a cause of action."[16]

Brown here perhaps puts the cart before the horse—he pleaded nondischargeability of the debt without first establishing a debt exists. Nevertheless, this pleading defect is not fatal to Brown's complaint. Although he has since retained counsel, Brown initially filed his complaint *pro se*, and it is well-settled that *pro se* complaints are held to less stringent standards than those

---

[12] *In re Glenn*, 502 B.R. 516, 529 (Bankr. N.D. Ill. 2013).
[13] 11 U.S.C. § 101(12).
[14] 11 U.S.C. § 101(5).
[15] *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 559, 110 S. Ct. 2126, 2131, 109 L. Ed. 2d 588 (1990).
[16] *In re Hassanally*, 208 B.R. 46, 50 (B.A.P. 9th Cir. 1997) (citing *Johnson v. Home State Bank*, 501 U.S. 78, 83, 111 S. Ct. 2150, 115 L. Ed. 2d 66 (1991)).

drafted by attorneys.[17] More importantly, Brown has pled elements sufficient to give rise to claims under state law, even if they technically were not labeled state law claims. Brown's § 523(a)(6) claim is clearly based on state law conversion, and, although less clear, his § 523(a)(2)(A) claim satisfies the pleading requirements for Florida common law fraud.[18] Indeed, in other contexts, the Eleventh Circuit has determined that the elements of § 523(a)(2)(A) and Florida common law fraud are nearly identical.[19] Brown will at trial need to prove his claim under both Florida common law fraud and § 523(a)(2)(A): first, to show a debt exists, and second, to show that debt should be excepted from Vega's discharge.

### Count I – False Misrepresentation or Actual Fraud

Brown in Count I claims Vega fraudulently induced him into making the contributions in The Verandas project and any money Vega owes him as a result of that fraud should be determined nondischargeable under § 523(a)(2)(A). Section 523(a)(2)(A) of the Bankruptcy Code provides that a debtor cannot discharge a debt to the extent the debt is obtained by "false pretenses, a false representation, or actual fraud."[20] "Courts have generally interpreted

---

[17] "A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007) (citing *Estelle v. Gamble,* 429 U.S. 97, 104–105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)) (internal citations omitted); *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972).

[18] "Under Florida law, the essential elements of a fraud claim are: '(1) a false statement concerning a specific material fact; (2) the maker's knowledge that the representation is false; (3) an intention that the representation induces another's reliance; and (4) consequent injury by the other party acting in reliance on the representation.'" [18] *State Farm Mut. Auto. Ins. Co. v. Weiss*, 410 F. Supp. 2d 1146, 1159 (M.D. Fla. 2006). *Accord St. Laurent*, 991 F.2d at 676 ("To prove fraud under Florida law, a plaintiff must establish that the defendant made a 'deliberate and knowing misrepresentation designed to cause, and actually causing detrimental reliance by the plaintiff.'").

Likewise, the nearly identical elements for a § 523(a)(2)(A) claim are: (i) the debtor made a false representation to deceive the creditor; (ii) the creditor relied on the misrepresentation; (iii) the reliance was justified; and (iv) the creditor sustained a loss as a result of the misrepresentation. *SEC v. Bilzerian (In re Bilzerian)*, 153 F.3d 1278, 1281 (11th Cir. 1998).

[19] *Cf. In re St. Laurent*, 991 F.2d 672, 676 (11th Cir. 1993) (holding that the elements of common law fraud in Florida "closely mirrors" the requirements of § 523(a)(2)(A), and are "sufficiently identical" to satisfy collateral estoppel's requirement that the "issue at stake must be identical to the one decided in the prior litigation").

[20] 11 U.S.C. § 523(a)(2)(A).

§ 523(a)(2)(A) to require the traditional elements of common law fraud."[21] To prove fraud, the plaintiff must establish these elements by a preponderance of the evidence: (i) the debtor made a false representation to deceive the creditor; (ii) the creditor relied on the misrepresentation; (iii) the reliance was justified; and (iv) the creditor sustained a loss as a result of the misrepresentation.[22]

Vega seems to argue that because he never received any money directly from Brown, Vega did not "obtain" the money within the meaning of the statute. Section 523(a)(2)(A) does not discharge a debtor from any debt "*obtained by* . . . false pretenses, a false representation, or actual fraud."[23] In *In re Bilzerian*, the Eleventh Circuit held that the "obtained by" language in § 523(a)(2)(A) does not necessarily require that a debtor personally receive money before the exception to discharge applies, so long as the debtor receives a benefit from the transaction he induced.[24] Brown, at the very least, established that whether Vega benefitted from the transactions remains an unresolved issue of material fact.

Brown set forth sufficient record evidence to satisfy his burden to oppose Vega's motion for summary judgment. Intent to deceive, actual reliance, and justifiable reliance are difficult to determine at the summary judgment stage because of their inherent reliance on the weight of testimony. "Generally, the issue of fraud is not properly the subject of summary judgment, because a resolution of the issues involved requires an exploration of the relevant facts and circumstances, and thus a court can seldom determine the presence of fraud absent a trial or

---

[21] *SEC v. Bilzerian (In re Bilzerian)*, 153 F.3d 1278, 1281 (11th Cir. 1998).
[22] *SEC v. Bilzerian (In re Bilzerian)*, 153 F.3d 1278, 1281 (11th Cir. 1998). *See also Field v. Mans,* 516 U.S. 59, 73-75, 116 S. Ct. 437, 445-46, 133 L. Ed. 2d 351 (1995) (holding that Section 523(a)(2)(A) requires justifiable rather than reasonable reliance).
[23] 11 U.S.C. § 523(a)(2)(A) (emphasis added).
[24] *HSSM #7 Ltd. P'Ship v. Bilzerian (In re Bilzerian)*, 100 F.3d 886, 889-91 (11th Cir. 1996).

evidentiary hearing."[25] Material factual issues abound within Brown's 523(a)(2)(A) claims, and they are not ripe for determination by summary judgment. Vega's motion for summary judgment as to Count I is denied.

### Count III – Conversion

Both Parties seek summary judgment on Count III. In this Count, Brown claims Vega's misappropriation of the money Brown contributed to WPPD for Vega's personal use renders Vega liable for conversion and that liability should be excepted from Vega's discharge under § 523(a)(6). Vega argues Brown lacks standing to bring the conversion claim. Because Brown provided the money to WPPD for use in The Verandas project, any claim for conversion rightfully belongs to *WPPD*, not Brown individually.[26]

Standing is the "threshold question in every federal case."[27] The party invoking federal jurisdiction bears the burden of demonstrating his standing to sue.[28] "To demonstrate standing, a party must show: (1) he has suffered, or imminently will suffer, an injury-in-fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable judgment is likely to redress the injury."[29] Determining whether a plaintiff has suffered a cognizable injury often requires examination of the cause of action he asserts.[30] "Essentially, the standing question . . . is whether

---

[25] *State Farm Mut. Auto. Ins. Co. v. Weiss*, 410 F. Supp. 2d 1146, 1159 (M.D. Fla. 2006).
[26] Although some of the checks and transfers were made directly to other entities, all of these transfers were considered by Brown to be investments into WPPD. Thus, even though some of Brown's investment funds went directly to RJV Homes, for example, he still considered these transfers to be made to or for the benefit of WPPD for use in The Verandas project. *See* Doc. No. 137-1 at ¶ 14.
[27] *Maverick Media Grp., Inc. v. Hillsborough Cnty., Fla.,* 528 F.3d 817, 819 (11th Cir. 2008) (internal quotations omitted).
[28] *Mulhall v. UNITE HERE Local 355,* 618 F.3d 1279, 1286 (11th Cir. 2010) (*citing Pittman v. Cole,* 267 F.3d 1269, 1282 (11th Cir. 2001)).
[29] *Mulhall*, 618 F.3d at 1286 (citing *Harrell v. The Florida Bar,* 608 F.3d 1241, 1253 (11th Cir.2010)).
[30] *In re Whittle*, 449 B.R. 427, 429 (Bankr. M.D. Fla. 2011).

the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief."[31]

The dischargeability of Brown's conversion claim rests on § 523(a)(6) that excepts from the discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."[32] "Willful and malicious injury includes willful and malicious conversion . . . ."[33] Florida law defines "conversion" as "an unauthorized act which deprives another of his property permanently or for an indefinite time."[34] To establish a claim for conversion, a plaintiff must prove: "(1) an act of dominion wrongfully asserted, (2) over plaintiff's property, that is (3) inconsistent with plaintiff's ownership therein."[35]

Vega points to this Court's determination in *In re Whittle*[36] as support for Brown's lack of standing. In *Whittle*, the plaintiffs, 50% owners of an LLC, claimed that the debtor, the other 50% owner, misused and diverted money properly belonging to the LLC.[37] The plaintiffs sought to except an embezzlement claim from the debtor's discharge under § 523(a)(4).[38] I concluded that although the LLC may have had a claim for embezzlement, an LLC, as a distinct legal entity, holds property separate and apart from the property of its members.[39] LLC property

---

[31] *In re Whittle*, 449 B.R. 427, 429 (Bankr. M.D. Fla. 2011) (citing *Warth v. Seldin*, 422 U.S. 490, 500, 95 S. Ct. 2197, 2206, 45 L. Ed. 2d 343 (1975)).

[32] 11 U.S.C. § 523(a)(6). "Willful" within the context of § 523(a)(6) requires the debtor to intend more than merely the act that causes the injury; a debtor "is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury." *In re Walker*, 48 F.3d 1161 1164-65 (11th Cir. 1995). "Malicious" means "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will." *Id.* at 1164.

[33] *In re Wolfson,* 56 F.3d 52, 54 (11th Cir. 1995).

[34] *In re Grosman*, 2007 WL 1526701, at *16 (Bankr. M.D. Fla. 2007) (quoting *Fogade v. ENB Revocable Trust*, 263 F.3d 1274, 1291 (11th Cir. 2001)) (other citations omitted).

[35] *Id.* (citing *Compania de Elaborados de Café v. Cardinal Capital Mgmt., Inc.*, 401 F. Supp. 2d 1270 (S.D. Fla. 2003)). Conversion is "the disseisin of the owner or an interference with legal rights which are incident to ownership, such as a right to possession." *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 136 F. Supp. 2d 1271, 1294 (S.D. Fla. 2001).

[36] *In re Whittle*, 449 B.R. 427 (Bankr. M.D. Fla. 2011).

[37] *Id.*

[38] *Id.* at 429.

[39] *Id.*

"includes the right to be repaid wrongful distributions made to members."[40] Consequently, because "only creditors to whom a debt is owed may assert that a debt is nondischargeable in bankruptcy," the individual LLC members did not have standing to bring the § 523(a)(4) embezzlement claim.[41]

The same reasoning applies to Brown's § 523(a)(6) claim. Section 523(c)(1) states that a debtor will be discharged from a debt of the kind specified in § 523(a)(6) *unless* "on request of the creditor to whom such debt is owed," the bankruptcy court determines the debt is not to be discharged.[42] Any debt for Vega's alleged conversion would be owed to WPPD, not Brown. The conversion elements, listed above, emphasize dominion wrongfully asserted of *plaintiff's* property inconsistent with *plaintiff's* ownership.[43] Only after Brown transferred the money to WPPD did the alleged misappropriation of funds take place. Brown does not have standing to claim that Vega converted the money he provided to WPPD.

Brown controlled WPPD at the time he filed his complaint and WPPD could have filed the complaint.[44] But, WPPD is not the plaintiff. Brown is the plaintiff in his individual capacity. Brown cites various cases but in each case the claims are plainly brought either derivatively or by the entities themselves.[45] What is more, this Court previously dismissed Brown's § 523(a)(4) embezzlement claim for this same standing deficiency, and Brown never

---

[40] *Id.* at 429-30.
[41] *Id.*
[42] 11 U.S.C. § 523(c)(1).
[43] *In re Grosman*, 2007 WL 1526701, at *16 (Bankr. M.D. Fla. 2007) (citing *Compania de Elaborados de Café v. Cardinal Capital Mgmt., Inc.*, 401 F. Supp. 2d 1270 (S.D. Fla. 2003))
[44] *See* Doc. No. 125, Exhibit 3 (showing Brown as holding a 64% interest in WPPD as of June 24, 2009). Brown filed his complaint on November 15, 2010. Doc. No. 1.
[45] *See, e.g.*, *Ford Motor Credit Co. v. Owens*, 807 F.2d 1556, 1557 (11th Cir. 1987) (case brought by corporation); *In re Grosman*, 2007 WL 1526701, at *16 (Bankr. M.D. Fla. 2007) (brought derivatively on facts similar to the present case).

sought to amend his complaint regarding the § 523(a)(6) count.[46] Brown was or should have been fully aware of the standing issues his claims raised. He has had a full opportunity to amend his complaint or bring the proper party into the suit and has not.[47] At this point, approaching trial four years after this adversary was filed, it is too late.

Brown now conjures two new arguments to support his standing. First, Brown argues that by squandering WPPD's assets, Vega converted Brown's *ownership interest* in WPPD, not the funds he contributed. Second, Brown asserts WPPD executed an assignment in his favor assigning him any interest WPPD had in a conversion claim against Vega. Both of these new arguments fail.

First, Brown raised neither of these two arguments in his complaint. "A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."[48] This new conversion claim—that Vega converted his *ownership interest* in WPPD—is presented for the first time in Brown's response. It is clear from Brown's complaint he was seeking to recover damages for conversion of the money he contributed; this new, albeit creative argument was not presented in his complaint.[49]

Even if Brown had properly alleged that Vega converted his *ownership interest* in WPPD, he would not prevail. Brown cites a number of cases for the proposition that an ownership interest in a business can be subject to conversion.[50] An ownership interest in a

---

[46] Doc. No. 86. Vega's motion to dismiss raised the standing issue only with respect to the § 523(a)(4) count (Doc. No. 12).

[47] Brown never sought to amend his complaint or substitute parties.

[48] *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1215 (11th Cir. 2004).

[49] In Count III of his complaint, Brown alleges Vega "knowingly and fraudulently appropriated Brown's *funds* with the intent to convert Brown's *funds*, and did convert Brown's *funds*, for Vega's own personal purposes and for purposes other than for the WPPD and the development of the Verandas property, thereby depriving Brown of the proper use of the *funds*." (Doc. No. 1 at ¶ 108) (emphasis added). In the next paragraph, Brown alleges "Vega wrongfully asserted dominion over *WPPD's assets* to the detriment of Brown and in a manner inconsistent with Brown's ownership interest in *WPPD's assets*." (Doc. No. 1 at ¶ 109) (emphasis added).

[50] Doc. No. 136 at p. 14.

corporation or LLC, such as stock, certainly can be converted just like any other piece of personal property. But the cases Brown cites are plainly distinguishable. For example, in *In re Estate of Corbin*,[51] a personal representative was found liable for conversion when she improperly conveyed to herself a business interest belonging to the probate estate and then improperly sold that business interest to a third party.[52] And in *Goodrich v. Malowney*,[53] the defendants were found liable for conversion after they took control of the plaintiff-shareholder's stock through a series of underhanded dealings and used the stock to vote the plaintiff out of his position with the company.[54]

The key distinction is that in *Corbin* and *Goodrich*, the defendants exercised the requisite wrongful dominion over the plaintiffs' property.[55] Here, Brown argues Vega diminished the value of his ownership interest in WPPD by misappropriating WPPD money and, therefore, is liable for conversion of his ownership interest. Reducing the value of someone's ownership interest is not the same as exercising dominion over that person's ownership interest. Conversion simply is not the appropriate cause of action to fit Brown's allegations as he presented them in his complaint.

Second, Brown's alleged but belated assignment of WPPD's conversion claim presents different problems. The assignment was not executed until January 17, 2014, the day Brown filed his response to Vega's motion for summary judgment, and over three years after Brown filed his complaint.[56] A plaintiff must have standing "at the outset of the litigation."[57] "An

---

[51] 391 So. 2d 731 (3d DCA 1980).
[52] *In re Estate of Corbin*, 391 So. 2d 731 (3d DCA 1980).
[53] 157 So.2d 829 (2d DCA 1963).
[54] *Goodrich v. Malowney*, 157 So.2d 829 (2d DCA 1963).
[55] *See Corbin*, 391 So. 2d 731; *Goodrich*, 157 So.2d 829.
[56] Doc. No. 137-21, Exhibit WW.
[57] *Friends of Earth, Inc. v. Laidlaw Env'tl Servs. (TOC) Inc.,* 528 U.S. 167, 189, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000). *See also Jones v. Goord,* 435 F. Supp. 2d 221, 225 (S.D.N.Y. 2006) ("Standing is determined at the time a complaint is filed.").

assignment of legal rights which takes place after the commencement of litigation does not abdicate the constitutional requirement that standing must exist from the commencement of litigation."[58] Because the assignment took place long after Brown filed his complaint, the assignment is not effective to confer standing.

Second, the assignment raises statute of limitations concerns. WPPD assigned whatever claims it had to Brown on January 17, 2014.[59] But what claims did it have? Florida's has a four-year statute of limitations for conversion.[60] This statute of limitations begins to run as soon as the last element of the cause of action occurs.[61] According to Brown's affidavit, the last of Vega's alleged withdrawals of WPPD funds occurred on March 30, 2009.[62] Consequently, the latest the four-year statute of limitations could have extended was March 30, 2013, a date long passed. Because WPPD could not have brought a conversion claim against Vega as of the date of the assignment, the assignment does not provide Brown retroactively with standing.[63] Vega's motion for summary judgment as to Count III for conversion is granted.

## Conclusion

Material factual issues warrant denial of Vega's motion for summary judgment as to Count I is denied. Vega's motion for summary judgment as to Count I is denied. Because Brown alleges Vega converted assets belonging to WPPD at the time of conversion, not himself individually, Brown does not have standing to pursue his conversion claim through § 523(a)(6).

---

[58] *Berger v. Weinstein,* No. 07–994, 2008 WL 3183404, at *3 n. 4 (E.D. Pa. Aug. 6, 2008).
[59] Doc. No. 137-21, Exhibit WW.
[60] Fla. Stat. § 95.11(3) (2013). *See also Chau Kieu Nguyen v. JP Morgan Chase Bank, NA*, 709 F.3d 1342, 1345-46 (11th Cir. 2013) *cert. denied*, 134 S. Ct. 111, 187 L. Ed. 2d 255 (2013) (stating plaintiff's claims, including conversion, were barred by Florida's four-year statute of limitations).
[61] *See Davis v. Monahan*, 832 So. 2d 708 (Fla. 2002).
[62] Doc. No. 137-5, Exhibit C.
[63] Brown cites *Rasmussen v. Central Florida Council Boy Scouts of America, Inc.*, 412 F. App'x 230, 234 (11th Cir. 2011), in support of his argument that the assignment conferred him standing. *Rasmussen* merely shows that an assignment *can* confer standing, but in that case the assignment was properly alleged in the complaint and the statute of limitations was not at issue. *Id.* at 233-34.

Accordingly, Vega's motion for summary judgment is partially granted as to Count III and Brown's motion for summary judgment is denied as to Count III. Final Judgment will be entered in favor or the Debtor, Robert J. Vega, and against the Plaintiff, Scott A. Brown. A separate order and final judgment will be entered consistent with this memorandum opinion.

    DONE AND ORDERED in Orlando, Florida, on June 12, 2014.

                                      KAREN S. JENNEMANN
                                      Chief United States Bankruptcy Judge

Ray Rotella, attorney for the Defendant, is directed to serve a copy of this Order on interested parties and file a proof of service within 3 days of entry of the Order.